## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSEPH P. CARSON,                           )
                                            )
        Petitioner                          )
                                            )    Civil Action No: 07-0649 (PLF)
        v.                                  )
U.S. OFFICE OF SPECIAL COUNSEL              )
                                            )
        Respondent                          )
                                            )
_____ )

## OPPOSITION TO RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF MANDAMUS AND MOTION TO SUSPEND PROCESSING OF THIS CASE, PENDING OUTCOME OF RELATED CASE AT U.S. COURT OF APPEALS FOR FEDERAL CIRCUIT

Petitioner respectfully opposes respondent's motion to dismiss the petition for writ of mandamus. The respondent's motion evidences errors of law and fact. He also moves to suspend the processing of this case, pending the outcome of a related case at the US Court of Appeals for the Federal Circuit, <u>Carson v. Merit Systems Protection Board</u>, docket no. 2007-3134

### Background

After "prevailing" in no fewer than 8 separate whistleblower-related decisions at the MSPB and filing about 20 PPP complaints with OSC since 1992, Mr. Carson *finally* realized that he was just a "mark" in a charade which is intended to advance the economic interests of attorneys in so-called whistleblower

RECEIVED

JUN 1  2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

advocacy groups and in the private sector with practices involving federal
employment law (exhibits 1 and 2). He finally realized that they gave a "free
pass" to OSC and MSPB lawbreaking, despite their positive legal and professional
duty to "blow whistles" on it, because it drove people like him to their doors,
checkbooks in hand. The fact that the issues raised by Mr. Carson in this and the
other related appeals are appear to be "questions of first impression" support his
"free pass" contention.   Mr. Carson also notes that the only other published
decision involving OSC's statutory duties to protect federal employees from PPP's
since it was created as an independent agency in 1989 was also brought by a pro se
party, Calvin Weber (Mr. Carson and Mr. Weber have spoken several times, Mr.
Carson has also spoken to the attorney the court assigned to assist Mr. Weber.)

To Mr. Carson, these attorneys betray their oaths to their profession of law,
their clients' trust, they undermine rule of law, and they harm the public health and
safety, even if they benefit individually from their professional misconduct.

Mr. Carson has now been seeking the Judicial review of this Court for over
three years regarding his claims of OSC and MSPB non-compliance with their
respective statutory duties to protect him (as almost all civilian federal employees
in almost all agencies) from prohibited personnel practices (PPP's), particularly
whistleblower reprisal.   There are now six related pending cases in front of this

2

Court, while two other cases (docket nos. 04-315 and 05-537) have been dispositioned by this Court. The key issue left unresolved by 04-315 (pages 13 and 14 of the March 27, 2006 decision) - whether the agency actions in several circumstances were personnel actions for creating "any other significant change in....working conditions" per 5 USC 2302(a)(2)(A)(xi) - is now being considered by the US Court of Appeals for the Federal Circuit in <u>Carson v. Merit Systems Protection Board</u>, docket no. 2007-3134.

This Court's decision in 05-537 is being reviewed by the US Court of Appeals for the D.C. Circuit, docket no. 06-5364.) So, at this point, after 3 years of litigation - primarily via "extraordinary" petitions for writs of mandamus - involving 10 cases, there are a number of outstanding questions of law at issue. These questions include:

1.    Is OSC required to determine and appropriately report its statutory required PPP determination "whether there are reasonable grounds to believe a PPP has occurred, exists, or is to be taken" for each PPP complaint it receives?

2.    If OSC makes a positive PPP determination, must it report it per 5 USC 1214(e), which allows an alternative reporting per 5 USC 1214(b)(2)(B)?

3.    If OSC makes a negative PPP determination, must it report it to the complainant, using the statutory PPP determination language, in its pre-

determination and/or PPP investigation termination letter?

4.    Is the intent of the interplay of 5 USC 1214(e) and 5 USC 1214(b)(2)(B)

mean that OSC only *has* to report its positive PPP determinations once, or

does it mean it does not have to report them at all?  Does it allow OSC to

initially report positive PPP determinations per 5 USC 1214(e) and

subsequently per 5 USC 1214(b)(2)(B), if unsatisfied with the agency's

response to its positive PPP determination per 5 USC 1214(e)?  Is the

purpose of the 5 USC 1214(b)(2)(B) report to establish jurisdiction at

MSPB when OSC determines: 1) there are reasonable grounds to believe a

PPP has occurred, and 2) corrective action is warranted, in a context of an

agency's unsatisfactory response to its 5 USC 1214(e) positive PPP

determination (if made)?  Or do 5 USC 1214(e) and 5 USC 1214(b)(2)(B),

taken together, mean that OSC does not ever have to report any positive

PPP determination it makes, that it is always a completely discretionary

determination on OSC's part, as OSC always has complete discretion in

determining "whether corrective action is required" for any positive PPP

determination it makes?

5.    If OSC claims to make an Annual Report to Congress per 5 USC 1218, must

the information contained in the report comply with the requirements of 5

4

USC 1218?

6.    Must MSPB conduct the necessary oversight of OSC and other agencies to determine and report "whether the public interest in a civil service free of PPP's is being adequately protected," per 5 USC 1204(a)(3) and (e)(3)?

7.    Must OSC provide the "termination statement" of 5 USC 1214 appendix when terminating a PPP investigation on the basis of its making a negative PPP determination?

8.    Must OSC provide the information described in the "termination statement" of 5 USC 1214 appendix when requested by the complainant following its making a negative PPP determination and closing a PPP investigation?

9.    Is OSC allowed to informally "dangle" its making a positive PPP determination to induce an agency to take informal corrective action?

10.   Does Weber v. Department of Army, 209 F.3d 756 (D.C. Cir. 2000) make clear that mandamus relief is appropriate for any non-compliance on the part of OSC with any statutory duty it has to protect federal employees from PPP's, up to and including the "highly discretionary" writing of recommendations when OSC can seek their enforcement at MSPB?

As Mr. Carson perceives it, the determinations by this Court or the other involved Courts could possibly provide a basis for the 10,000 or more federal

5

employees who have filed PPP complaints with OSC since 1989 getting a measure

of relief from OSC's failure to comply with its statutory obligations to protect

them and from MSPB's enabling failure to conduct the necessary oversight of

OSC to make its required determination and report.  As exhibits 3 and 4

demonstrate, after OSC destroys its PPP investigation files, 3 years after closing

the investigation, it has no record that it made or appropriately reported its

statutory required PPP determination for a given complaint.

More specifically, if this Court determines OSC has failed to comply with

its statutory obligations to federal employees who alleged the whistleblower

reprisal type PPP (one of twelve PPP types listed in law at 5 USC 2302(b), with

(b)(8) being the whistleblower reprisal type PPP), that determination could

provide a basis for MSPB reopening and reconsidering some, if not many, of it

final decisions in the upwards of 3000 whistleblower appeals it has processed per

5 USC 1221 since 1989, on the basis of those decisions not being made in

accordance with law, due to OSC's failures to comply with its statutory

obligations to the federal employees who subsequently sought relief via

whistleblower appeals to the MSPB.  By law and MSPB regulation (5 USC

7701(e)(1)(B) and 5 CFR 1201.118), MSPB can re-open and reconsider any final

decision it has made, at any time for any reason, even if the decision has been left

6

intact by the US Court of Appeals for the Federal Circuit, which has a judicial monopoly on MSPB decisions.

Furthermore, this entire situation apparently illustrates significant inadequacies in the scope and implementation of the legal profession's rules of profession conduct. About 40% of OSC 110 employees are attorneys, who were specifically hired to implement specific law (5 USC 1214) to protect federal employees from PPP's. These attorneys are not assigned to the OSC Office of General Counsel - they do not represent OSC's managers who implement 5 USC 1214. Instead, they are the individuals responsible to implement 5 USC 1214 as "caseworker" attorneys who have "caseworker-client" relationships with federal employees who seek OSC (and their) protection.

Apparently, these attorneys perceive that while they may have a positive duty to implement 5 USC 1214, they have a higher positive duty to actively cover-up their non-compliance with it to protect and advance the interests of OSC, their employer, whom they also perceive to be their client, as their failure to implement 5 USC 1214 becomes OSC's failure to implement 5 USC 1214.

Mr. Carson hopes this case and the related cases results in changes to the ABA Model Rules of Professional Conduct to make explicitly clear that an attorney betrays his profession and rule of law when he fails to implement law he

is specifically charged to implement, particularly if the attorney is hired by the government to implement law (5 USC 1214) intended to protect other government employees from reprisal when they responsibly voice concerns about the implementation of law, rule, or regulation that they were specifically hired to implement.

America, if not Western Civilization, is "in play" in a war on terror, which could conceivably result in nuclear terrorist attacks in the coming decade. When "rule of law" is suborned by government attorneys specifically hired to implement the law (5 USC 1214) created to protect other federal employees, including nuclear safety engineers in the Department of Energy, which has vital roles for the safeguards and security of nuclear weapon material, in America and elsewhere around the world,  from reprisal for responsibly voicing concerns to protect the public health and safety - and this has apparently gone on for 18 years, without being identified and corrected - it does not bode well for our children and grandchildren getting to die natural deaths. Mr. Carson earnestly hopes the 21th Century will bring unprecedented peace and well-being to America and humanity, but thinks this less likely when licensed attorneys, hired to implement a specific law, 5 USC 1214, to protect people like him from agency retribution, can (only because they are lawyers) apparently claim to have a higher positive legal duty to

8

cover-up their lawbreaking to protect the interests of their "client," the agency,

OSC, that employs them. Mr. Carson hopes this Court determines it has a

responsibility to "blow whistles" about this apparent meltdown in legal ethics,

given the connection between legal ethics and rule of law in America.

### Responding to Specifics in the Motion to Dismiss - the Motion to dismiss makes a misleading citation to Weber

Page 3 of the motion quotes a portion of Weber v. Dept. of Army, 209 F.3d

at 760. While the quote is accurate, it is taken out of context and misleading - the

quote is from the beginning of the Court's treatment of the issue, instead of being

from its conclusion, which clearly implies it would be appropriate for the Court to

direct OSC to write "highly discretionary" recommendations when it had the

power to seek their enforcement at MSPB.

The Court began its treatment of the issue by acknowledging it is pushing

the outer edge of mandamus to direct OSC to write recommendations about

restoring someone affected by a PPP, but the subsequent analysis and conclusion

clearly implies such a course of action is appropriate, when OSC can seek their

enforcement at the MSPB. The Court's analysis underscores the importance the

Weber Court placed on OSC scrupulously complying with each and every of its

statutory obligations to protect federal employees from PPP's - it would even

direct OSC to write recommendations, when OSC could seek their enforcement at MSPB, despite such an action being "far removed from the paradigm case for mandamus."

The reason the Court did not direct such mandamus relief in <u>Weber</u> was not because it was "far removed from the paradigm case for mandamus," but because <u>Weber</u> involved a revocation of a security clearance, something outside the jurisdiction of MSPB - so regardless of what OSC might recommend, it could not seek to enforce its recommendation at MSPB.

Consistent with OSC's inability to enforce any recommendation it might write in <u>Weber</u>, the Court concluded its treatment of the issue by stating:

> It (writ of mandamus) is not to be granted is order to command a gesture. We think it would be inappropriate to issue a writ of mandamus to compel the OSC to make what would amount to a purely horatory statement. (<u>Weber</u>, concluding two sentences, p 760)

The implication of the Court's conclusion in <u>Weber</u> is clear - if OSC could seek to enforce its recommendation at MSPB, then it could well be appropriate for a Court to issue a writ of mandamus that OSC write "highly discretionary" recommendations, despite its being "far removed from the paradigm case for mandamus."

But the entire argument is a "red herring" in the instant case because OSC

10

has to make and appropriately report a positive PPP determination (as <u>Weber</u> on

page 758 requires when OSC makes a positive PPP determination), before the

issue of OSC's "highly discretionary" recommendations even becomes relevant.

### OSC cites wrong law as controlling its PPP investigations.

The law now controlling OSC's statutory obligations to protect federal

employees from PPP's is the Federal Whistleblower Protection Act of 1989, P.L.

101-12, not, as OSC claims on page 3 of its motion, P.L. 95-454.

### OSC's description of the PPP complaint investigation process of 5 USC 1214 is fundamentally incorrect

Pages 4-6 of the motion, "OSC and its Complaint Process," is

fundamentally wrong. Every PPP investigation conducted by OSC is eventually

terminated - regardless of whether OSC makes a positive PPP determination or

not.  OSC is fundamentally wrong to claim that the law requires it to write a pre-

determination notice and PPP investigation termination notice only when it makes

a negative PPP determination.   Nothing in the law supports that claim.  To the

contrary, the law is clear that OSC is required write these letters at the conclusion

of every PPP investigation it conducts, reporting the results - positive or negative -

of its statutory required PPP determination.  The only difference is that OSC is

also required to report its positive PPP determinations to the agency per 5 USC

11

1214(e), which allows OSC make a subsequent and/or alternative positive PPP

determination report to the agency per 5 USC 1214(b)(2)(B).

**The statutory language for the termination letter, as well as the "termination statement" require OSC to report its statutory required PPP determination**

5 USC 1214(a)(1)(A) requires OSC to make its PPP determination,

"whether there are reasonable grounds to believe a PPP has occurred, exists, or is

to be taken," as does 1214(b)(2)(A).  1214(a)(2)(A)(iii) requires the termination

letter to "notifying the person (the complainant) of the reasons for terminating the

investigation."   These sections of the law, together with 1214(e), make clear that

OSC must both make and appropriately report its statutory required PPP

determination, including in the PPP investigation termination letter.

**OSC Misleads the Court in Claiming Compliance with the "Termination Statement"**

As the attached declaration and its attachments demonstrate (exhibit 5),

OSC has no intention of providing Mr. Carson any additional information, as

required by the "termination statement," contrary to the claims OSC makes on

page 7 of its motion.

**Application of Res Judicata to the claims of the action**

OSC's claims are belied by the specific statement of the cited case, Carson

12

v. Office of Special Counsel, docket no. 04-315, page 5, footnote 3. The issue of
whether OSC properly reported its statutory required PPP determination was not
addressed by the Court in that case, consistent with that footnote.

OSC is correct that Mr. Carson meant to refer to case no. 06-1833, not 07-
1833, but the rest of the argument is erroneous. Even though the same underlying
agency actions are involved, case no. 06-1833 involves different PPP complaints
to OSC than this case, even if similar allegations about their non-compliance with
relevant law are made.

There is, however, a pending case involving a legal question potentially
relevant to both case. no. 06-1833 and this case. Carson v. Merit Systems
Protection Board, docket 2007-3134, is now pending at US Court of Appeals for
the Federal Circuit. A key issue in that case is whether the three agency actions
(failure to comply with 1994 settlement agreement, rumor campaign of Mr. Carson
being a "threat of workplace violence," and failure of agency to process several
agency grievances in 1999 and 2000), described in OSC PPP complaint
investigations which are the basis of this case - MA-04-1018, MA-04-1886, MA-
04-2444 - and case no. 06-1833 - MA-06-2118, and MA-06-2752 - constituted
personnel actions for creating "any other significant change in .... working
conditions" for Mr. Carson.

This is an apparent question of first impression at the Federal Circuit. If the Federal Circuit rules no personnel actions occurred, the issues in this case and in 06-1833 remain unchanged. But if it rules that personnel action(s) occurred, then OSC will have to re-open some or all of these PPP complaint investigations in light of that ruling.

Mr. Carson respectfully suggests that, in the interest of judicial economy, the processing of this case and the related case 06-1833 be suspended until the Federal Circuit adjudicates the key issue of whether the involved agency actions were personnel actions.

Respectfully Submitted,

Joseph P. Carson, P.E., pro se
10953 Twin Harbour Drive
Knoxville, TN 37934
863-300-5831

## <u>Certificate of Service</u>

I certify that the following documents for <u>Carson v. Office of Special Counsel</u>, docket no. 07-0649:

1.      Opposition to motion to dismiss and its exhibits


was served, via overnight delivery, on:

OSC Representative:

Judith Kidwell
US Attorneys Office
555 Fourth St, NW
Room E4905
Washington, DC 20530

Joseph P. Carson

May 31, 2007

15

**List of Exhibits for opposition to motion to dismiss petition for writ of mandamus in Carson v. OSC, docket no. 07-649**

1.  Federal Times "Commentary" by Joe Carson and others on OSC and MSPB non-compliance with their statutory duties to protect feds from PPP's, April 16, 2007

2.  Special Counsel Scott Bloch's "letter to the editor" of Federal Times in response to Joe Carson's "Commentary," which takes no specific issue with the accuracy of the claims in the "Commentary."

3.  December 9, 2004 declaration of Hope Riley, a records officer at OSC.

4.  Case profile for MA-03-0151 which does not evidence OSC made or reported its required PPP determination.

5.  Declaration about Joe Carson's efforts to obtain information per the "termination statement" with attached 3 documents: 1) email to Ms. Kidwell, 2) email to Ms. Wheeler, and 3) letter from OSC.

*Commentary in federal times* *www.federaltimes.com*

**Commentary: Lack of protection for whistleblowers imperils us all**

By JOE CARSON
April 16, 2007

Many civilian federal employees, in a variety of agencies, are on the front lines of the war on terrorism. But who protects them from workplace retribution when they put their sworn duty to defend and protect the public's health and safety ahead of their self-interest or the interests of their supervisors and agencies?

The primary mission of the Office of Special Counsel (OSC) is to protect employees in nearly every agency — except FBI and intelligence agencies — from 11 types of prohibited personnel practices, particularly whistleblower reprisal. OSC has about 110 employees, about 40 percent of whom are licensed attorneys. Like public defenders, OSC's attorneys are paid by the government to act in the interests of federal employees who seek their protection.

OSC annually receives about 1,700 complaints of prohibited personnel practices, alleging about 3,500 specific practices. We contend the law — 5 USC 1214(b)(2)(A) — is absolutely clear that OSC is required to investigate complaints and report its determination "whether there are reasonable grounds to believe a [prohibited practice] has occurred, exists, or is to be taken."

If OSC makes a positive determination, according to the law and a 2000 federal court decision, then it must report that determination to the involved agency, the Office of Personnel Management (OPM) and the Merit Systems Protection Board (MSPB). This is to enable the agency heads to comply with their lawful duty to prevent prohibited personnel practices in their agencies.

However, according to OSC's annual report for 2004, public records maintained by OSC, and a Freedom of Information Act response from MSPB, OSC did not report a single positive determination of prohibited personnel practices to MSPB during 2002-2004, not in 5,529 separate complaints it investigated and closed in that time. It made three such reports to MSPB in fiscal 2005-2006.

While OSC claims to have obtained about 320 "favorable actions" when agencies took actions as a result of OSC investigations of complaints from fiscal 2002 through 2004, there is little, if any, publicly available documentation to substantiate OSC's claims.

We contend that MSPB is statutorily required to conduct the necessary inquiries of OSC and other federal agencies to determine and publicly report "whether the public interest in a civil service free of [prohibited personnel practices] is being adequately protected." In response to a Freedom Of Information Act request, MSPB acknowledged that it has not conducted the necessary inquiries of OSC and other agencies to make that report but claims that its special studies and reports, particularly in the aggregate, contain the relevant information.

Our position is that MSPB has failed to conduct required reviews of OSC, enabling OSC noncompliance with its specific statutory obligations to protect federal employees from prohibited personnel practices.

Bottom line: No one in any agency or Congress can reasonably assure federal employees, based on any independent oversight of OSC, that if they stick their necks out to do their duty to protect public safety — including in the war on terrorism — OSC will comply with its lawful duty to protect them from government retaliation. That is a formula for failed levees, doomed space shuttles, catastrophic terrorist attacks, neglected veterans, etc.

What to do? The new Congress must perform its constitutional duty of oversight of OSC and MSPB to ensure their scrupulous compliance with relevant law in protecting federal employees from prohibited personnel practices. Both OSC and MSPB are due to be reauthorized by the end of fiscal 2007, so thorough congressional oversight of these agencies is now timely.

If congressional or judicial oversight substantiates our concerns, there are potentially thousands of victims who may well merit official restoration and rehabilitation via congressional action.

If we are correct, OSC attorneys can be seen as failing to comply with their legal and professional duty to "blow whistles" on OSC's failure to comply with the law in protecting federal employees.

**Joe Carson** is a whistleblower and Energy Department nuclear safety engineer. His co-authors are **Jeffrey Black**, a federal air marshal and whistleblower; **Carol Czarkowski**, former Navy contracting officer and whistleblower; **David Nolan**, former White House attorney under President Reagan; and **Michael Springman**, former Foreign Service officer and whistleblower. The opinions are those of the authors and not of their current or previous employers.

✉ Email this story to a friend



Answers to your toughest career questions

Use of this site signifies your agreement to the Terms of Service (Last Modified: April 18 2007 09:38:49.)

*Exhibit 1*

5/11/2007

www.federaltimes.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOSEPH P. CARSON, P.E.,                    )
                                           )
      Plaintiff,                       )
                                           )
        v.                           ) Civil Action No.:04-0315 (PLF)
                                           )
U.S. OFFICE OF SPECIAL COUNSEL,            )   ECF
                                           )
      Defendant.                       )
_____)

## DECLARATION OF HOPE RILEY

    I, HOPE RILEY, in lieu of an affidavit, as permitted by 28 U.S.C. §1746, declare as follows from personal knowledge:

    1. I am the Records Officer at the U.S. Office of Special Counsel (OSC). My office is located at OSC headquarters at 1730 M Street, N.W., Suite 201, Washington, D.C. 20036. I have held this position since 2001.

    2. As part of my responsibilities as Records Officer, I am familiar with OSC's records disposition schedule. This schedule is approved by the National Archives & Records Administration. At all times since 1984, the schedule has provided that investigative case files, such as MA-93-0151, are to be destroyed three years after the file is closed. The schedule states that a file is closed after final disposition and no further action is required by OSC on the case.

    3. In the normal course of business, MA-93-0151 would have been destroyed three years after the case was closed.

    4. I have reviewed the case profile on MA-93-0151 that was generated by the

Ex 1 3-1

agency's automated case tracking system, Def. Exh. 1. The profile indicates that this file
was closed on October 26, 1993.

5. The case profile indicates that MA-93-0151 was destroyed on January 1, 1997.

6. This action was in accordance with the OSC records schedule in effect at that
time.

I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct in accordance with 28 U.S.C. §1746.

Executed this 9th day of December, 2004.

Hope Riley
OSC Records Officer

3-2

# Case Profile Report

Time: 10:59:10                                                      Date: December 09, 2004

File Number: MA-93-0151          File Name: CARSON                          Status: D
Action Office: Record Management Service                                    Age: 0 days

| Days In: | CEU | ADR | Investigation |
|----------|-----|-----|---------------|

| Name | Type |
|------|------|
| Mr. JOSEPH P CARSON<br>10953 Twin Harbour Drive<br>Knoxville, TN 37922 | COMPLAINANT (EMPLOYEE) |
| ▓▓▓▓▓▓▓▓▓▓<br>DEPT OF ENERGY,OAK RIDGE ,REGIONAL OFFICE | SUBJECT |
| Hon. JOHN J DUNCAN<br>115 CANNON HOUSE OFC BLDG<br>WASHINGTON, DC 20515 | CONGRESSIONAL - H OF REP |

Type of Matter/Case: Prohibited personnel practice including reprisal for Whistleblowing
Received: 10/23/1992                240th Day: **/**/**
Agency: Department of Energy
Installation: OAK RIDGE REGIONAL OFC KNOXVIL          State where violation occurred: TN
Complainant's Pay Schedule: GS          Series: 801                         Grade: 14

| Attorney | Mediator | CEU Analyst | Investigator |
|----------|----------|-------------|--------------|
| SCHULZ, Cathleen<br>CONSTANTINE, Pete<br>EDDY, R | | Fields-Williams, Audre | Greenwell, Francis |

Current Assignee: Pete CONSTANTINE
Required Letters:                     90 Day Letter Due: 02/08/1993          60 Day Letter Due: 12/07/1993
Personnel Actions: disciplinary or corrective action - Chapter 75
Personnel Actions: disciplinary or corrective action - Chapter 75
Personnel Actions: performance evaluation - Chapter 43
Personnel Actions: performance evaluation - Chapter 43

## Related Cases

FO040810 CARSON |

## Allegations

*Ex 4*

*4-)*

Case Profile Report
File Number: MA-93-0151, page 2

| Allegations | |
|---|---|
| Allegation | REPRISAL FOR WHISTLEBLOWING (WBPA'89) |
| Identified | INCLUDED WITH INFORMATION RECEIVED INITIALLY |
| Investigative Findings | IDENTIFIED DURING INVESTIGATION |
| Initial Disposition | REFERRED FOR INVESTIGATION/REPORT |
| Disposition | INSUFFICIENT EVIDENCE FOR FURTHER ACTION |
| | |
| Allegation | REPRISAL FOR APPEAL (WBPA) |
| Identified | INCLUDED WITH INFORMATION RECEIVED INITIALLY |
| Investigative Findings | IDENTIFIED DURING INVESTIGATION |
| Initial Disposition | REFERRED FOR INVESTIGATION/REPORT |
| Disposition | INSUFFICIENT EVIDENCE FOR FURTHER ACTION |

## Corrective Actions

| Action Date | ActionCode | Action Description | Corr. Date | User ID | Date captured |
|---|---|---|---|---|---|
| 10/23/1992 | 200 | 2302(b)(8) allegation received | | mlm ceu | 11/16/1992 |
| 11/03/1992 | 999 | matter docketed | 10/23/1992 | dcr dc | 11/03/1992 |
| 11/10/1992 | 101 | Acknowledgement letter sent | | mlm ceu | 11/24/1992 |
| 11/16/1992 | 210 | operant personnel action date entered | | mlm ceu | 11/16/1992 |
| 11/16/1992 | 954 | CEU analyst assigned | | mlm ceu | 11/16/1992 |
| 12/23/1992 | 966 | Personnel action codes entered | | coa pd | 12/24/1992 |
| 12/23/1992 | 966 | Personnel action codes entered | | coa pd | 12/30/1992 |
| 12/23/1992 | 611 | referred for investigation | | coa pd | 12/24/1992 |
| 01/05/1993 | 952 | Case assigned to an investigator | | ruthid | 01/05/1993 |
| 02/08/1993 | 670 | 90 day letter sent | | ruthid | 03/29/1993 |
| 04/09/1993 | 671 | 60 day letter sent | | ruthid | 04/08/1993 |
| 05/07/1993 | 753 | Report of Investigation approved | | ruthid | 05/10/1993 |
| 06/08/1993 | 671 | 60 day letter sent | | coa pd | 06/11/1993 |
| 06/22/1993 | 951 | Case reassigned to another attorney | | coa pd | 06/22/1993 |
| 08/09/1993 | 671 | 60 day letter sent | | coa pd | 09/01/1993 |
| 08/13/1993 | 609 | Prosecution recommendation submitted to IOSC | | coa pd | 08/13/1993 |
| 10/08/1993 | 671 | 60 day letter sent | | coa pd | 10/08/1993 |
| 10/26/1993 | 240 | 2302(b)(8) allegation closed | | coa pd | 10/26/1993 |
| 10/26/1993 | 220 | b8 right to sue letter sent | | coa pd | 10/26/1993 |
| 10/26/1993 | CLS | Closed | | adr dc | 10/27/1993 |
| 10/26/1993 | 987 | Closed file folder charged out | | adr dc | 10/27/1993 |
| 11/17/1993 | 735 | request to reopen case | 11/09/1993 | oam dc | 11/18/1993 |
| 11/29/1993 | 109 | received request for status of case | | oam dc | 12/01/1993 |
| 12/01/1993 | 988 | Closed file returned to OSC | | adr dc | 12/02/1993 |

4-2

Case Profile Report
File Number: MA-93-0151, page 3

| Action Date | ActionCode | Action Description | Corr. Date | User ID | Date captured |
|---|---|---|---|---|---|
| | | Records Management | | | |
| 02/24/1994 | 987 | Closed file folder charged out - William Reukauf | | evf dc | 02/24/1994 |
| 02/24/1994 | 736 | Previous determination reaffirmed | 11/09/1993 | evf dc | 03/02/1994 |
| 02/24/1994 | 199 | Other communication to complainant | | evf dc | 03/02/1994 |
| | Remarks: | ACKNOWLEDGE RQST TO REOPEN | | | |
| 03/02/1994 | 988 | Closed file returned to OSC Records Management | | evf dc | 03/02/1994 |
| 05/19/1995 | 985 | file retired to Federal records center | | dcr dc | 05/23/1995 |
| | Remarks: | SEE BOX 7 | | | |
| 05/19/1995 | 985 | file retired to Federal records center | | mgr mrs | 04/11/1997 |
| | Remarks: | SEE BOX 7 | | | |
| 01/01/1997 | 986 | File destroyed | | mgr mrs | 04/11/1997 |

4-3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOSEPH P. CARSON,                    )
                                     )
                                     )
                                     )
          Petitioner,                )
                                     )
                                     )
          v.                         )    **Docket No. 07-0649 (PLF)**
                                     )
                                     )
OFFICE OF SPECIAL COUNSEL,           )
                                     )
                                     )
                                     )
          Respondent,                )
                                     )
_____      )

## DECLARATION OF JOSEPH CARSON

1.  I am Joseph Carson, PE, the pro se petitioner in this case. After obtaining

    OSC's motion to dismiss the petition for writ of mandamus, I contacted

    OSC's representative, Judith Kidwell, by email and voice mail, asking her

    assistance in my obtaining the information described in the "termination

    statement." I did the same with Barbara Wheeler, an OSC attorney, who

    signed the PPP investigation termination letter for MA-04-1018 (Ms.

$5 -$   1



Ehlinger and Mr. Boulay, who signed the other PPP investigation termination letters have since left OSC).

2. My emails to Ms. Kidwell and Ms. Wheeler are attached (attachments 1 and 2). Ms. Kidwell responded by email, informing me that she would not assist my efforts. Kristin Ellis, an attorney at OSC, contacted me by mail, informing me to bring my concerns to Ms. Kidwell (attachment 3).

3. Neither Ms. Kidwell, Ms. Wheeler, nor anyone else at OSC have been responsive to my efforts to obtain the information for the involved PPP complaints per the "termination statement," contrary to the claims made by OSC's motion to dismiss.

4. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

May 31, 2007

_____
Joseph Carson, PE

5- 2

To: kidwell_judith_doj
From: Joe Carson <jpcarson@tds.net>
Subject: Carson v. OSC, docket 07-649, desire for information described in "termination statement"
Cc:
Bcc:
Attached:


Ms. Judith Kidwell
US Dept. of Justice

Dear Ms. Kidwell,

I left voice mail messages on your voicemail box and that of Barbara Wheeler at OSC about the claim in your motion to dismiss that OSC had complied with its duty to answer my questions about the three PPP complaints involved in this legal action, per the "termination statement."

Barbara Wheeler, has previously refused to respond to my telephone requests for information - she claimed that she has no knowledge about the "termination statement" and would not respond to requests for information made per the "termination statement."

Patrick Boulay and Melissa Ehlinger are no longer employed by OSC, but neither provided me information pursuant to the "termination statement."

I consider it your duty, given your claim to the Court, to ensure that OSC provides me information about the three PPP complaints subject to this action, as required by the "termination statement" and its associated legislative history.

My questions are quite reasonable:

For each PPP alleged, report OSC's statutory required determination "whether there are reasonable grounds to believe (the alleged) PPP has occurred, exists, or is to be taken."

What case law, MSPB or otherwise, does OSC use in determining whether an agency action constitutes a personnel action for creating "any other significant change in ..... working conditions."

Did OSC interview Ms. Davidow in its PPP investigations and, if so, who else was involved with her decision to not process the involved agency grievances?

Can or does a (b)(9) type PPP occur when an agency fails to process an agency grievance?

Can or does a (b)(9) type PPP occur when an agency fails to timely or fully comply with a settlement agreement resulting from an MSPB appeal?

Can or does a (b)(9) type PPP occur when an agency fails to timely implement an MSPB order of corrective action resulting from an MSPB appeal?

Does the decision in <u>Weber</u> require OSC to report each and every of its positive PPP

---



determinations per 5 USC 1214(e)?  If not, why not?   Does it require OSC to report them per 5 USC 1214(b)(2)(B) regardless of whether OSC thinks they "require corrective action"?

Can OSC "dangle" its making or not making a positive PPP determination in front of an agency to induce a settlement?

As I shared in my voice mail, I plan to submit a declaration in my response to your motion to dismiss the case, describing my efforts and their results - with you and OSC - in obtaining the information described in the "termination statement" for these three now terminated OSC PPP investigations.

Respectfully,

Joe Carson, PE
Knoxville, TN
865-300-5831

5-4

To: bwheeler@osc.gov
From: Joe Carson <jpcarson@tds.net>
Subject: request for information, per 5 USC 1214
Cc: kidwell_judith_doj
Bcc:
Attached: K:\carsonvoscpdf\WWW_handout.pdf;


May 21, 2007

Barbara Wheeler
Licensed Attorney Specifically hired to implement 5 USC 1214 to protect me and others
OSC

Via: fax

Re: Your legal duty - your "doubly sworn duty" as a attorney and federal employee - to protect me
by fully complying with the law you were hired to implement - 5 USC 1214

Dear Ms. Wheeler,

The Dept. of Justice in representing in federal court, in Carson v. OSC, docket no. 07-649, that you
provided all the information I requested from you, per the requirements of the "termination
statement" of 5 USC 1214 in OSC file no. MA-04-1018.  You signed the pre-determination and PPP
investigation termination letters in it.

As I described in my voice mail, if you do not contact me to provide the information you are
statutory required to provide me, I will file a declaration with the Court, taking exception to DOJ
representations.

As you know, I consider you and other caseworker attorneys at OSC to betray your profession and
rule of law in your failure to comply with the law you were hired to implement and your failure to
"blow whistles" about OSC's non-compliance with 5 USC 1214.  If my efforts to "out" this
lawbreaking and see the legal profession appropriately you and others for your professional
misconduct threaten you, so be it - individuals should feel "threatened" if that stops them from
professional misconduct or other lawbreaking.

Attached is my related letter to Judith Kidwell, a DOJ attorney representing OSC in the case, which
details the information I contend you are legally obligated, as a licensed attorney and OSC
employee to provide me, your client in the "casework-client" relationship we have in OSC file no.
MA-04-1018.

I have also attached the handout I distributed to others at "Whistleblower Week in Washington" last
week, including some members of Congress.

Respectfully,


Joe Carson, PE

10953 Twin Harbour Drive
Knoxville, TN 37934
865-300-5831

copy: Judith Kidwell, DOJ

***************************************************************

Date: Sat, 19 May 2007 00:14:30 -0400
To: kidwell_judith_doj
From: Joe Carson <jpcarson@tds.net>
Subject: Carson v. OSC, docket 07-649, desire for information described in "termination statement"

Ms. Judith Kidwell
US Dept. of Justice

Dear Ms. Kidwell,

I left voice mail messages on your voicemail box and that of Barbara Wheeler at OSC about the claim in your motion to dismiss that OSC had complied with its duty to answer my questions about the three PPP complaints involved in this legal action, per the "termination statement."

Barbara Wheeler, has previously refused to respond to my telephone requests for information - she claimed that she has no knowledge about the "termination statement" and would not respond to requests for information made per the "termination statement."

Patrick Boulay and Melissa Ehlinger  are no longer employed by OSC, but neither provided me information pursuant to the "termination statement."

I consider it your duty, given your claim to the Court, to ensure that OSC provides me information about the three PPP complaints subject to this action, as required by the "termination statement" and its associated legislative history.

My questions are quite reasonable:

For each PPP alleged, report OSC's statutory required determination "whether there are reasonable grounds to believe (the alleged) PPP has occurred, exists, or is to be taken."

What case law, MSPB or otherwise, does OSC use in determining whether an agency action constitutes a personnel action for creating "any other significant change in ..... working conditions."

Did OSC interview Ms. Davidow in its PPP investigations and, if so, who else was involved with her decision to not process the involved agency grievances?

Can or does a (b)(9) type PPP occur when an agency fails to process an agency grievance?

Can or does a (b)(9) type PPP occur when an agency fails to timely or fully comply with a settlement agreement resulting from an MSPB appeal?

3-6

Can or does a (b)(9) type PPP occur when an agency fails to timely implement an MSPB order of corrective action resulting from an MSPB appeal?

Does the decision in <u>Weber</u> require OSC to report each and every of its positive PPP determinations per 5 USC 1214(e)? If not, why not? Does it require OSC to report them per 5 USC 1214(b)(2)(B) regardless of whether OSC thinks they "require corrective action"?

Can OSC "dangle" its making or not making a positive PPP determination in front of an agency to induce a settlement?

As I shared in my voice mail, I plan to submit a declaration in my response to your motion to dismiss the case, describing my efforts and their results - with you and OSC - in obtaining the information described in the "termination statement" for these three now terminated OSC PPP investigations.

Respectfully,

Joe Carson, PE
Knoxville, TN
865-300-5831



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-254-3600

May 22, 2007

Mr. Joseph Carson
10953 Twin Harbour Drive
Knoxville, TN 37922

     Re: <u>Your Voicemail Message for Barbara Wheeler, OSC Attorney</u>

Dear Mr. Carson:

     Ms. Wheeler forwarded to me your recent voicemail message regarding OSC File No. MA-04-1018. As you know, this case is part of one of your current lawsuits against the Office of Special Counsel ("OSC"). OSC is represented in the pending litigation by Assistant U.S. Attorney Judith Kidwell. Thus, you should direct any questions that you have regarding this litigation to her, as OSC's legal representative, rather than to OSC staff members. Her telephone number is (202) 514-7250.

     Sincerely yours,

     Kristin L. Ellis
     Litigation Counsel
     Legal Counsel and Policy Division

cc:   Judith Kidwell
     Assistant U.S. Attorney

5-8